[No. 59559-8-I.   Division One.   December 22, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN SAMUEL LARKINS, *Appellant*.

*Gregory C. Link* and *Susan F. Wilk* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Catherine M. McDowall, Deputy*, for respondent.

¶1 GROSSE, J. — The Washington crime of burglary requires intent to commit a crime against a person or property therein. Here, the defendant's Ohio burglary conviction rested on his intent to commit a misdemeanor. Because the misdemeanor category includes crimes other than those against a person or property, that conviction does not equate to a crime equivalent under Washington law. We reverse and remand for resentencing.

## FACTS

¶2 On November 15, 2006, Brian Larkins pleaded guilty to a felony violation of a no-contact order. In his plea, Larkins disputed the comparability of his two out-of-state prior convictions for burglary and conspiracy in 1992 and 1996, respectively. The 1996 conspiracy conviction in federal district court is not at issue here. At sentencing, the trial court found the State proved by a preponderance of the evidence that Larkins' Ohio burglary conviction was factually comparable with the Washington crime of burglary.

¶3 Approximately four months after Larkins was sentenced, that same issue (whether Larkins' Ohio burglary conviction was comparable to Washington) was before this court on Larkins' earlier violation of a no-contact order. In a per curiam decision issued on April 23, 2007,[1] this court held the Ohio conviction included in Larkins' offender score to be legally comparable to a Washington offense precluding the need to examine the underlying factual basis for that conviction. The Supreme Court denied Larkins' petition for review of that earlier conviction.[2]

¶4 In this current appeal, Larkins again contests the inclusion of the Ohio burglary conviction in his offender score. A commissioner of this court affirmed the trial court's judgment and sentence on a motion on the merits, holding that the Ohio conviction was comparable and further that

---

[1] *State v. Larkins*, noted at 138 Wn. App. 1013 (2007).

[2] *State v. Larkins*, 163 Wn.2d 1024, 185 P.3d 1194 (2008).

the doctrine of collateral estoppel bars Larkins from relitigating this issue as this identical issue of comparability was resolved in a previous appeal by this court. Because of concerns regarding the comparability of the Ohio conviction and the application of collateral estoppel, this court set the matter for oral argument.

## ANALYSIS

■ ■ ¶5 Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, a defendant's offender score establishes the range within which he must be sentenced.[3] A court's calculation of an offender score is reviewed de novo.[4] Regarding prior out-of-state convictions, RCW 9.94A.525(3) provides:

> Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law. Federal convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law. If there is no clearly comparable offense under Washington law or the offense is one that is usually considered subject to exclusive federal jurisdiction, the offense shall be scored as a class C felony equivalent if it was a felony under the relevant federal statute.

The goal is to ensure that defendants with prior convictions are treated similarly, regardless of where those convictions occurred.[5]

■ ■ ¶6 The State bears the burden of proving both the existence and the comparability of an offender's prior out-of-state conviction.[6] The Supreme Court has adopted a two-part test for determining whether such a conviction is comparable to a Washington crime which, with one excep-

---

[3] RCW 9.94A.530, .712(3).

[4] *State v. Bergstrom*, 162 Wn.2d 87, 92, 169 P.3d 816 (2007).

[5] *State v. Morley*, 134 Wn.2d 588, 602, 952 P.2d 167 (1998).

[6] *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999).

tion, must rise to the level of a felony to be included in the offender score.[7] First, a sentencing court compares the legal elements of the out-of-state crime with those of the Washington crime. If the crimes are so comparable, the court counts the defendant's out-of-state conviction as an equivalent Washington conviction.[8] If the elements of the out-of-state crime are different, then the court must examine the undisputed facts from the record of the foreign conviction to determine whether that conviction was for conduct that would satisfy the elements of the comparable Washington crime.[9]

¶7 In Washington, a person is guilty of burglary if he enters or remains unlawfully in a building or dwelling with intent to commit a crime against a person or property therein.[10] Such intent may be inferred from the facts.

> In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.[11]

¶8 In Washington, the State does not have to prove the specific crime the defendant intended to commit, but it does have to prove the defendant entered or remained unlawfully with intent to commit a crime against a person or property therein.[12]

¶9 When Washington recodified its criminal code in 1976, the final legislative report acknowledged the exist-

---

[7] Where the current conviction is for a felony traffic offense, under the SRA, a sentencing court may include serious misdemeanor traffic offenses in the offender score. RCW 9.94A.525(11).

[8] *Morley*, 134 Wn.2d at 605-06; *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 254-55, 111 P.3d 837 (2005).

[9] *Morley*, 134 Wn.2d at 606; *Lavery*, 154 Wn.2d at 255.

[10] RCW 9A.52.025, .030.

[11] RCW 9A.52.040.

[12] *State v. Bergeron*, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985).

ence of different types of crimes: crimes against persons, crimes against property, victimless crimes, and miscellaneous crimes.[13] Thus, crimes exist that do not fit within the definitions for committing a "burglary" in Washington.

¶10 In Ohio, Larkins was charged with one count of burglary and two counts of assault. The Ohio statute then in effect defined "burglary" as follows:

2911.12 BURGLARY

(A) No person, by force, stealth, or deception, shall do any of the following:

(1) Trespass in an occupied structure or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense or any felony;

(2) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense;

(3) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present.[14]

The Ohio statute thus permits a crime other than one against a person or property as an element of burglary. The Ohio indictment charged Larkins with three counts. Count I charged Larkins with the felony burglary as follows:

That BRIAN SAMUEL LARKINS . . . did, by force, stealth or deception, trespass in 1505 Irwin N.E., Canton, Ohio, a permanent or temporary habitation of Unnie B. Lipscomb, when a person was or persons were present or likely to be present, with purpose to commit in the habitation a misdemeanor that was not a theft offense.

Count II charged him with the misdemeanor assault of Unnie Lipscomb on the same date as the burglary and count III charged him with the misdemeanor assault of Irvin Ann Burrino, also on the same date as the burglary.

---

[13] 1975 FINAL LEGISLATIVE REPORT, 44th Wash. Leg., 1st Ex. Sess., at 243-44.

[14] Former OHIO REV. CODE ANN. § 2911.12(A)(2) (1990).

¶11 At the sentencing hearing, the court looked at the underlying facts of Larkins' guilty plea in Ohio to determine if those facts would also constitute the crime of burglary under Washington law. The court recounted:

> [T]he fact that [Larkins] pled guilty to breaking and entering a particular house with intent to commit a misdemeanor or non-theft crime, and in fact it was the house of a particular person, and in fact that person was assaulted by [Larkins], and pled guilty to that, I think the only missing link in that, and this is what I want to make clear what I am going to do on this, it doesn't say explicitly that she was in the house when she was assaulted.

In his plea, Larkins admitted to all the underlying facts in the indictment, but he argues that any inference drawn from the facts is tantamount to judicial fact finding. We agree. The indictment and the Ohio statute requires that the entry be committed with intent to commit a misdemeanor that was not a theft offense. The Washington statute requires that the would-be burglar enter with the intent to commit "a crime against a person or property therein."[15]

¶12 For the trial court to determine that Larkins committed a crime against a person or property, it necessarily had to draw a factual inference. Under *In re Personal Restraint of Lavery*,[16] the sentencing court in Washington cannot draw such a factual inference without violating *Apprendi v. New Jersey*.[17] *Apprendi* stands for the proposition that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Blakely v. Washington* clarified *Apprendi* and held that the statutory maximum means a sentence which a judge can impose

---

[15] RCW 9A.52.040.

[16] 154 Wn.2d 249, 111 P.3d 837 (2005).

[17] 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

"solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."[18]

¶13 The records of the Ohio burglary conviction must establish in themselves, without any fact finding or inference-drawing by our sentencing court, that there was proof beyond a reasonable doubt that Larkins entered the habitation with the intent to commit a crime against a person or property therein. "Any attempt to examine the underlying facts of a foreign conviction, facts that were neither admitted or stipulated to, nor proved to the finder of fact beyond a reasonable doubt in the foreign conviction, proves problematic."[19]

¶14 Here, the trial court engaged in judicial fact finding when it made the inference that the trespass on Lipscomb's property was for the purpose of committing the assault against Lipscomb. The undisputed facts in the indictment before the trial court do not go so far. If the inference does not inevitably follow from the admitted facts, then a sentencing judge cannot rely on that inference, even when the defendant stipulated to underlying facts that might support such an inference.[20]

*Collateral Estoppel*

¶15 A commissioner of this court ruled that the doctrine of collateral estoppel barred Larkins from relitigating the identical issue before this court. We requested additional briefing on the matter. But at oral argument, the State conceded that should this court find the underlying crime not comparable, then an injustice

---

[18] 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (emphasis omitted).

[19] *Lavery*, 154 Wn.2d at 258.

[20] *See State v. Hagar*, 158 Wn.2d 369, 372, 144 P.3d 298 (2006) (Holding that even though the defendant stipulated to certain facts in the plea agreement with the understanding that the trial judge could engage in fact finding and impose an exceptional sentence, the defendant did not agree that the crimes constituted a " 'major economic offense.' " Even though the underlying facts could support such a finding, the defendant was still entitled to a jury.).

would exist and collateral estoppel would not apply.[21] We therefore do not address the issue further.

¶16 We reverse and remand for resentencing.

BECKER and APPELWICK, JJ., concur.

---

[21] *See In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 872, 50 P.3d 618 (2002) (a defendant cannot agree to be sentenced beyond what is statutorily authorized).